IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

NICHOLAS ATKINSON;
LENORA ATKINSON,

Plaintiffs,

v.

JEFF LINDSEY COMMUNTIIES, INC., et. al.,

Defendant/Third Party Plaintiff

v.

DAVID ELLISON, CUSTOM VINYL EXTERIORS, INC., and TONY JAMES MASONRY, et al.,

Third Party Defendants.

CIVIL ACTION NO. 3:14-cv-1132-WHA

(wo)

**MEMORANDUM OPINION AND ORDER**

I. INTRODUCTION

This case is before the court on a Motion for Partial Summary Judgment (Doc. #56), filed by the Defendant on February 12, 2016.

The Plaintiffs filed a Complaint on September 26, 2014 in the Circuit Court for Russell County, Alabama. This case was removed to this court on November 3, 2014 on the basis of diversity jurisdiction. The Plaintiffs are completely diverse in citizenship from the Defendants and the amount in controversy exceeds $75,000. Therefore, the court may exercise diversity jurisdiction over the Plaintiffs' claims. *See* 28 U.S.C. §1332.

On January 15, 2015, Defendant Jeff Lindsey Communities, Inc. filed a Third-Party Complaint against David Ellison, Custom Vinyl Exteriors, Inc., and Tony James Masory, the sub-contractors for the construction of the Atkinsons' home.

The Plaintiffs bring claims for negligence/wantonness: construction (Count One); negligence/wantonness: hiring, supervising, and training (Count Two); negligence/wantonness (Count Three); suppression (Count Four); third party beneficiary (Count Five); breach of warranties (Count Six); breach of contract (Count Seven); deceptive trade practices (Count Eight); nuisance (Count Nine); and tolling of the statute of limitations (Count Ten). The motion for Partial Summary Judgment requests the dismissal of Counts One, Two, Three, Four, Five, and Eight of the Complaint.

For reasons to be discussed, the Motion for Partial Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the

record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. FACTS

The submissions of the parties establish the following facts, construed in the light most favorable to the non-movant:

Nicholas and Lenora Atkinson ("the Atkinsons"), purchased a home at 248 Owens Road in Fort Mitchell, Alabama 36856. The Atkinsons are the first owners of the home. The Defendant, Jeff Lindsey Communities, Inc., ("Lindsey"), constructed the home. Lindsey used sub-contractors in the construction of the home. The Atkinsons and Lindsey entered into an Alabama New Construction Purchase and Sale Agreement in June of 2010. The contract contained a Seller's New Construction Property Disclosure Form stating, among other things,

that to the best of the knowledge and belief of the Seller as of the date of this disclosure, "The residential structure has been or will be completed in accordance with the applicable building codes, ordinances, and regulations." (Doc. #56-2 at p.16). The closing on the home took place on July 29, 2010.

The Atkinsons began noticing problems with the home after taking possession. They noticed problems including water intrusion and rotting of their back door. The Atkinsons hired a home inspector who identified construction defects and violations of the building code and residential construction industry standards. The Atkinsons contend that the defects and violations noted in the expert's E-Services Report caused damage to their home.

IV. DISCUSSION

Lindsey moves for summary judgment on the Atkinsons' claims for negligent and wanton construction (Count One); negligent and wanton hiring, supervising, and training (Count Two); negligence and wantonness (Count Three); suppression (Count Four); third party beneficiary (Count Five); and deceptive trade practices (Count Eight). In opposing the Motion, the Atkinsons only make arguments and point to evidence in support of their negligence and suppression claims. The Atkinsons agree that summary judgment is appropriate for their wantonness, third-party beneficiary, and deceptive trade practices claims. (Doc. #63 at p.2).[1] Accordingly, the court will discuss only the motion and opposition as they relate to the negligence and suppression claims.

Negligence Claims

Lindsey moves for summary judgment on the negligence claims brought against it on the ground that it cannot be liable for the actions of a subcontractor.

---

[1] The court has reviewed the evidentiary material submitted by Lindsey and finds no question of fact as to any material issue raised by them as a ground for summary judgment as to these claims. *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

Under Alabama law, a principal is not liable for the torts of an independent contractor, *Fuller v. Tractor & Equipment Co., Inc*., 545 So. 2d 757 (Ala. 1989). Lindsey acknowledges that there are exceptions which apply to non-delegable duties. *See Fuller,* 545 So. 2d at 759. There are two common non-delegable duties recognized in Alabama. The first, a principal is not shielded from liability for any activity that is "inherently or intrinsically dangerous." *Boroughs v. Joiner*, 337 So. 2d 340, 342 (Ala 1976). The second, a principal cannot be shielded from liability for the negligent performance of a subcontractor when the principal owes certain obligations to the other by contract or by law. *Fuller,* 545 So. 2d at 759.

Lindsey takes the position that neither of these non-delegable duty exceptions applies in this case because construction is not inherently dangerous and there is no provision in the Purchase and Sale Agreement that Lindsey would be responsible for the actions of the subcontractors.

The Atkinsons appear to have advanced two theories in support of their negligence claims: a legal and a contractual non-delegable duty. In support of the former, they have cited the court to *Turner v. Westhampton Court, L.L.C.*, 903 So. 2d 82, 93 (Ala. 2004), for the proposition that a builder is obligated to construct a house in a workmanlike manner.

In *Turner,* the homeowners who purchased a home from a contractor asserted a tort claim based on the actions of the subcontractor which improperly installed a synthetic stucco. On appeal, the purchasers raised the argument the Atkinsons have made in this case; namely, that the contractor owed a nondelegable duty. Rather than decide that issue, however, the Supreme Court of Alabama found that the argument had been waived. *Turner,* 903 So. 2d at 88-9. In the same opinion, the court did acknowledge that a builder-vendor has an obligation to construct a house that it will offer for sale in a workmanlike manner, but then stated that this "obligation

manifests itself in the implied warranty of workmanship." *Id.* at 93. This court cannot conclude, therefore, that *Turner* supports the finding of a legal non-delegable duty which gives rise to tort liability.

The Atkinsons' other non-delegable duty argument arises from contract language. They have cited to provisions of the contract which state that to the best of the Seller's knowledge and belief, "[t]he residential structure on the Property has been or will be completed in accordance with the applicable building codes, ordinances and regulations" (Doc. #56-2 at p. 16) and to Exhibit K which states that work and materials will be supplied by Seller's contractors and subcontractors.

In its initial Reply, Lindsey did not respond to the Atkinsons' non-delegable duty argument. When given an opportunity to file an additional response to the Atkinsons' non-delegable duty argument, Lindsey acknowledged that there is a line of cases in Alabama law which recognizes that a contractor can be held liable for the actions of a sub-contractor if the contractor agrees to a non-delegable duty. (Doc. #71). For example, in *Alabama Power Co. v. Pierre*, 183 So. 65 (Ala. 1938), the Pierres purchased electrical fixtures for their new home from Alabama Power Company. As an inducement to close the deal, Alabama Power agreed to install the fixtures at no charge. Alabama Power contracted with a third party to complete the actual installation; during the installation the subcontractors inadvertently set the house on fire. The Pierres sued Alabama Power, alleging that the installation of the fixtures was a non-delegable duty. The Alabama Supreme Court agreed and observed that the duty was non-delegable as "far as these plaintiffs were concerned, and the contractor may be treated in law as the agent or servant of defendant, though as between the parties and in a strict legal sense such relationship did not in fact exist." 183 So. at 668. Similarly, in *Fuller*, 545 So. 2d at 759, S & M contracted

with T & E for the sale of a front-end loader with air conditioning. In the event that the air conditioning was not installed properly, S & M would look to T & E to rectify the problem. T & E undertook to provide air conditioning under the contract for sale and was thereby bound with the non-delegable duty to ensure that the air conditioning was installed in a reasonable manner. *Fuller*, 545 So. 2d at 759.

Lindsey refers the court to the Purchase and Sale Agreement between it and the Atkinsons and argues that *Pierre* and *Fuller* are distinguishable from the instant case because in this case there was no affirmative, contractual obligation in the contract.

This case is not identical to *Pierre* or *Fuller*, because those cases involved separate installation agreements whereby the contractor undertook an affirmative obligation which was then carried out by a subcontractor. In this case, there is a contract which generally refers to providing materials and subcontractors, but which does not state an affirmative obligation to the buyer regarding the subcontractors. The contract also includes a disclosure form which refers to the construction of the structure. It is possible that the language in the disclosure form that, to the best of the seller's knowledge and belief, the construction was completed in accordance with applicable codes, may support a claim for breach of contract or warranty, but that language does not rise to the level of a contractual obligation as in the *Pierre* and *Fuller* line of cases to preclude summary judgment on the negligence claims. Summary judgment is, therefore, due to be GRANTED on the negligence claims.

Negligent Hiring, Supervision, and Training

Lindsey contends the only cognizable claim under Alabama law for negligent supervision is a defendant's supervision of its employees. Lindsey argues that it retained subcontractors to perform the work and that because these subcontractors were not employees of Lindsey, Lindsey

cannot be liable for negligent supervision. Even if the subcontractors were employees of Lindsey, Lindsey contends the Atkinsons have not presented affirmative proof of the employees' incompetence and that Lindsey should have known of the incompetence.

The Atkinsons state that Lindsey negligently supervised its subcontractors, as evidenced by the code violations and damages set forth in the E-Services Report. The Atkinsons contends that this was a voluntarily assumed duty breached by Lindsey. The Atkinsons do not, however, address the argument that there is no evidence that Lindsey was or should have been aware of any incompetence of the subcontractors.

Under Alabama law, it "is not sufficient merely to allege, or to show, that the employee acted incompetently. A plaintiff must establish 'by affirmative proof' that the employer actually knew of the incompetence, or that the employer reasonably should have known of it." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 683 (Ala. 2001). The Atkinsons having failed to make such a showing, summary judgment is due to be GRANTED as to the negligent supervision claim.

Suppression

A claim of suppression requires a showing that (1) the defendant had a duty to disclose the existing material fact; (2) that defendant suppressed this material fact; (3) that defendant's suppression of this fact induced the plaintiff to act or to refrain from acting; and (4) that plaintiff suffered actual damage as a proximate cause. However, to be held liable, the defendant must have knowledge of the material fact. *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1292 (Ala. 1993).

Lindsey points out that Lenora Atkinson testified that she never had any conversations with anyone from Lindsey where she believes they were lying to her or hiding information from

her intentionally. (Exhibit C at p. 30:18-23; 31:1-2). In Nicholas Atkinson's deposition when asked if there was anything Lindsey hid from him or intentionally did not tell him he responded that they would not call him back, which happened after the purchase of the home. Lindsey argues that any finding of knowledge or suppression would be mere speculation which is not sufficient to sustain a judgment.

The Atkinsons contend in response that there is evidence which could support a suppression claim. They state that Lindsey expressly stated to the Atkinsons in the purchase contract entered into in June 2010, after the home was constructed, that the home was built according to code, but that this was not true, as evidenced in the E-Services report, which is dated June 25, 2014. The Atkinsons argue, therefore, that there is an inference that the fact that the home was not built according to code was suppressed from them, causing them to purchase the home.

Lindsey replies that there is no evidence to support an inference that Lindsey had any knowledge of alleged suppressed facts. The only evidence to substantiate knowledge of the defects pointed to by the Atkinsons is the E-Services report made after the alleged suppression occurred, not before. *See Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc*., 785 F. Supp. 2d 1258, 1275 (M.D. Ala. 2011) (finding evidence of knowledge where project engineer possessed documents which disclosed a condition it failed to disclose). The suppression at issue is alleged to have occurred at the time of the contract. Because the Atkinsons have not pointed to evidence which would allow for an inference of actual knowledge of the fact suppressed at the time of the contract, the court must conclude that the Motion for Summary Judgment is due to be GRANTED as to the suppression claim. *See Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1350

(M.D. Ala. 1998) ("An action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed.")

V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion for Partial Summary Judgment (Doc. #56) is GRANTED as to the negligent construction and negligence claims in Counts One and Three; wantonness claims in Counts One, Two, and Three; the negligent hiring, supervising, and training in Count Two; the suppression claim in Count Four; the third party beneficiary claim in Count Five; and deceptive trade practices claim in Count Eight, and judgment is entered in favor of Jeff Lindsey Communities, Inc. and against Nicholas Atkinson and Lenora Atkinson on those claims.

2. The Atkinsons will proceed on their claims against Jeff Lindsey Communities for breach of warranties (Count Six), breach of contract (Count Seven), nuisance (Count Nine), and tolling of the statute of limitations (Count Ten).

Done this 4th day of April, 2016.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE